**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | |
|---|---|
| JOE DAVIS, | : |
|     Plaintiff, | : |
| vs. | :    1:03-CV-118 (WLS) |
| MANAGEMENT TECHNOLOGY, | : |
|     Defendant. | : |
| _____ | |

## ORDER

Pending before the Court is Defendant's motion for summary judgment. (Tab 23). For the following reasons, Defendant's motion for summary judgment (Tab 23) is **GRANTED.**

## BACKGROUND

Plaintiff Davis, an African-American male, began working for Defendant Management Technology a/k/a ManTech ("ManTech") in March 2000. Plaintiff was initially sent to work at Defendant's site in Mannheim, Germany. In March 2001, another employee of Defendant, Patrick Downey, was working at Defendant's work site on an army base in Bosnia. Downey was caught off the base with a prostitute and in a house with a large amount of illegal drugs. Downey was relieved of his assignment for Defendant and transferred back to Germany, where he apparently continued to work for Defendant. Plaintiff was selected to replace Downey and worked approximately three months in Bosnia. On or about December 15, 2001, Plaintiff returned to Bosnia.

Defendant is a defense contractor and provides support to the United States military throughout the world. Defendant provided certain logistical support to the United States Army at one of the Army's bases in Bosnia. The Army and, therefore, Defendant, considered service in Bosnia to be hazardous. As a result, Defendant's Bosnian employees received hazardous duty pay and were subject to certain policies and procedure related to security. One of the written policies imposed on Defendant's employees was that employees could not leave the base without permission of their supervisor and only in groups of two or more. Plaintiff's predecessor, Downey, a white male,

1

violated this procedure and was removed from Bosnia.

One day in early June 2002, Plaintiff was at his duty station at the base. His fellow ManTech employee, James Holland, was out of work with a toothache. Plaintiff left work early because he was sick. Soon afterwards the supervisor Bill Hardy came looking for Holland. Hardy determined that Holland was out of work and that Plaintiff had left early. Hardy knew that Holland and Plaintiff were friends and decided to visit Plaintiff at his room to see if he knew anything about Holland. When Hardy got to Plaintiff's room, Plaintiff was not there. Hardy then went to his office to get Plaintiff's cell phone number and called Plaintiff.

When Plaintiff answered the phone, he explained to Hardy that he at the front gate picking up some phone cards someone had brought him. Hardy ordered Plaintiff to report to him immediately. Hardy believed Plaintiff was not telling the truth because it sounded like Plaintiff was in a moving vehicle. About 20 minutes later, Plaintiff reported to Hardy. Hardy questioned Plaintiff further about his whereabouts and specifically asked Plaintiff if he had been off base at Mom's Restaurant. Mom's Restaurant was a local establish where soldiers and civilians could obtain legal and non-legal items, including drugs and prostitutes, that were not available on base. Hardy pointed out that a walk from the front gate to the office took about 5 minutes and that it had taken Plaintiff 20 minutes to arrive.

Hardy asked Plaintiff whether he knew where to find Holland. Plaintiff answered that he did not. As finding Holland was a priority, Hardy left the issue with Plaintiff for another time and continued his search for Holland. Holland was eventually located off the base.

Hardy, based on the evidence available to him, concluded that Plaintiff was off the base. Plaintiff denies he left the base. Hardy was then left to determine how Holland and Plaintiff should be punished for leaving the base without permission and alone. Initially, Hardy and his supervisors were inclined to place the two on probation. It was determined, however, that military officials were quite upset about the fact that two ManTech employees had violated security regulations. Base officials informed ManTech officials that they were going to revoke the security clearances for Plaintiff and Holland. As the two could not work on the base, ManTech removed the two from Bosnia. Hardy and his supervisors did not believe that Plaintiff and Holland should be terminated. It

2

was determined, however, that ManTech did not have any open positions for which the two were qualified to perform. They were informed that they were being sent back to Germany and that they may be laid-off upon arrival. Upon arrival both individuals completed pre-termination paperwork. After the paperwork was completed an individual holding the same qualifications as Holland resigned from the company and Holland was placed in his job. There were no openings in positions for which Plaintiff was qualified and he was laid-off on June 17, 2002.

## SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The Court is required to "resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences in his or her favor." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993) (quotations and citations omitted).

The moving party carries the initial burden of showing that there is an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). The substantive law governing the case determines which facts are material, and "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). For issues on which the non-movant bears the burden of proof at trial, the moving party "simply may show—that is, point out to the district court—that there is an absence of evidence to support the non-moving party's case. Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the non-moving party will be unable to prove its case." Fitzpatrick, 2 F.3d at 1116 (quotations and citations omitted).

If the moving party fails to overcome this initial burden, the Court must deny the motion for summary judgment without considering any evidence, if any, presented by the non-moving party. Fitzpatrick, 2 F.3d at 1116. If, on the other hand, the moving party overcomes this initial burden,

then the non-moving party must show the existence of a genuine issue of material fact that remains to be resolved at trial. Id. Moreover, the adverse party may not respond to the motion for summary judgment by summarily denying the allegations set forth by the moving party. Rather, the adverse party "must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e).

## ANALYSIS

Plaintiff brings this employment discrimination, racial discrimination, case against Defendant pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and 42 U.S.C. § 1981. Defendant argues that it is entitled to summary judgment on all of Plaintiff's claims.

### Title VII and § 1981 Claims

The test for determining race discrimination is the same under § 1981 and Title VII. Pennington v. City of Huntsville, 261 F.3d 1262 (11th Cir. 2001). There are three ways in which a plaintiff can establish a prima facie case of discrimination: "by presenting direct evidence of discriminatory intent; by meeting the test set forth in McDonnell Douglas Corp. V. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); or by demonstrating through statistics a pattern of discrimination." Early v. Champion International Corp., 907 F.2d 1077, 1081 (11th Cir. 1990). "'Direct evidence of discrimination would be evidence which, if believed, would prove the existence of a fact [in issue] without inference or presumption.'" Early, 907 at 1081 (alterations in original, citations omitted). An example of direct evidence would be a memo from management that said, "'Fire Early – he is too old.'" Id.

In this case, Plaintiff does not allege direct evidence of discrimination or seek to prove his case by statistical evidence. Therefore, Plaintiff must prove his case by satisfying the inferential test as set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To establish a prima facie claim of discrimination, Plaintiffs must show (1) that he is a member of a protected class; (2) that he suffered an adverse employment action; (3) that the employer treated similarly situated employees more favorably; and (4) that he was qualified to do the job. Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). Defendant must then put forth a legitimate,

4

nondiscriminatory reason for the Defendant's actions.  Walker v. Prudential Property and Casualty Ins. Co., 286 F.3d 1270, 1274-75 (11th Cir. 2002).   The burden then shifts to Plaintiffs to show that the articulated reason was merely a pretext for discrimination.  Walker, 286 F.3d at 1275.

Defendant does not concede that Plaintiff has established a *prima facie* case of discrimination, Defendant argues that Plaintiff cannot satisfy the McDonald Douglas test. Particularly, Defendant argues that Plaintiff has failed to meet the third element of the test because he is unable to show that any similarly situated employee was treated more favorably.

The record is clear that Holland and Downing, both white males were removed from Bosnia for leaving the base in violation of the written security policy.  All three men, two of which were supply specialists, Davis and Downing received the same punishment.  Holland held a different specialization not held by Davis or Downing.

When a plaintiff in a Title VII case cannot identify a similarly situated employee that was treated more favorably, the defendant is entitled to summary judgment.  Bellam v. Medical Ctr. Anesthesiology of Athens, P.C., 992 F.Supp. 1476 (M.D.Ga. 1997).  Failure to prove this element alone is sufficient to show that Plaintiff has failed to carry his burden of providing a *prima facie* case.

In his brief, Plaintiff fails to address this argument.  Plaintiff does not even argue or attempt to show that he has made out a *prima facie* case.  Instead, Plaintiff skips this part of the analysis and argues that Defendant's proffered reason for Davis being laid-off is pretextual.  The law is clear, that even if Plaintiff is correct about Defendant's motivation, the pretextual analysis is not even reached until Plaintiff satisfies his burden of making out a *prima facie* case.  As Plaintiff has failed to make out a *prima facie* case, Defendant is entitled to summary judgment on Plaintiff's Title VII and § 1981 claims.  Therefore, Defendant's motion for summary judgment (Tab 23) is **GRANTED.**

**SO ORDERED**, this   28th   day of September, 2005.

       /s/W. Louis Sands
**W. LOUIS SANDS, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**